UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
**Case No.  11-80847-CV- MIDDLEBROOKS/JOHNSON**

FLORIDA POWER & LIGHT COMPANY,
a Florida corporation

        Plaintiff,

v.

LIXI, INC., a foreign corporation;
BRENT D. BURNS, an individual;
JAMES J. KOVARIK, an individual; and
KEVIN J. URNESS, an individual.

        Defendants.

_____

**DEFENDANTS' MOTION TO DISMISS
AMENDED COMPLAINT WITH PREJUDICE UNDER RULE 12(b)(6)**

_____

Pursuant to Rule 12 (b)(6) of the Federal Rules of Civil Procedure,  Defendants, Lixi, Inc., Brent D. Burns, James J. Kovarik and Kevin J. Urness (collectively, the "Defendants"), move on the following grounds for the Court to dismiss with prejudice Florida Power and Light's ("FPL") Amended Complaint:

## INTRODUCTION

FPL's Amended Complaint does nothing to change the fact that the Court should dismiss all causes of action as failing to state a claim upon which relief can be granted.  As compared to its initial Complaint, the Amended Complaint merely adds another cause of action for trade secret misappropriation.  That new cause of action must be dismissed as well in view of the prior publication of the '183 patent application by FPL in seeking patent protection, which filing presented all of the alleged trade secrets years prior to any alleged misconduct by the Defendants.  Thus, the reasons why FPL's Amended Complain must be dismissed include:

        1.     All of FPL's claims are time barred.  FPL's breach of contract action is barred under Florida's 5-year statute of limitations (Fla. Stat. §95.11(2)(b)) and its tort claims are barred under the 4-year statute of limitations (Fla. Stat. §95.11(3)(a)).  The statute of limitations for a trade secret claim in Florida is three years.  See Fla. Stat. §688.007.  The statute of limitations

began to run on February 26, 2006, when Lixi received final payment from FPL under the Purchase Contract.  *BDI Construction Company v. Hartford Fire Insurance Co.*, 995 So. 2d 576 (Fla. 3rd DCA 2008).  FPL's patent claims remained unchanged from the date they were filed on February 1, 2007, and therefore FPL's contention that it did not know what the claims were until they were allowed is without merit.  (See Dkt. 20, Order Judicial Notice).

2.      FPL's Count II fails because the alleged trade secrets at issue were published in FPL's '183 patent application in August 2008 (now the '273 Patent). "The patenting of a product negates the possibility that the product is also a trade secret."  *Tedder Boat Ramp Sys., Inc. v. Hillsborough County, Fla.*, 54 F.Supp.2d 1300, 1303 (M.D.Fla.1999) (citing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800 (1988).  *See also Alderman v. Tandy Corp., 720 F.2d 1234 (11th Cir. 1983).*

3.      FPL's Counts III and IV are barred under Florida's economic loss doctrine.  *See HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So. 2d 1238, 1239 (Fla. 1996).  When the alleged duty breached is derived from the contractual relationship it cannot form the basis for a separate and distinct tort.  *Interstate Sec. Corp. v. Hayes Corp.,* 920 F.2d 769, 777, n. 12. (11th Cir. 1991).  Counts III and IV are tort claims arising from the identical alleged failure to provide patent declarations and assignments as set forth in Count I. (Dkt. 26, ¶¶ 52; 53 with ¶¶ 77 and 88).

4.      Both Counts III and IV are directed to FPL's '168 patent application – filed after the Original Complaint (Dkt. 1) and over 2 years after the expiration of the Purchase Contract.[1] (FPL has now abandoned the '076 application.).  Counts III and IV are predicated upon the refusal to sign a declaration for the '168 application, but it is never alleged or established that the Defendants were ever sent or asked to sign a declaration for the '168 application.  Moreover, Defendants cannot interfere with an expired contract.  *SCI Funeral Services of Florida, Inc. v. Henry*, 839 So. 2d 702, 706 (Fla. 3d DCA 2002).  The Purchase Contract expired March 31, 2008.  Finally, Defendants' provision to FPL of sworn declarations on authorized PTO forms, which Defendants had an unqualified right to provide as undisputed inventors of the claimed invention in the '183 and '076 applications, cannot as a matter of law form the basis of a tortious

---

[1] FPL never requested Defendants to sign any declaration for the '168 application.  FPL fails to provide as an exhibit to the Amended Complaint any such proposed declaration.  As such, there can be no breach of contract for an alleged refusal to sign a declaration that was never provided.  (Dkt. 26, Amended Complaint, ¶ 53).

interference with contractual relationship claim or a breach of loyalty claim. *Smith v. Emery Air Freight Corp.*, 512 So. 2d 229, 230 (Fla. 3d DCA 1987).

5.      There is a lack of personal jurisdiction over the individual Defendants Burns and Urness because they did not commit any tortious act directed to or causing injury in Florida. Instead, Defendants provided FPL with legal declarations on forms authorized by the PTO, attesting to the undisputed fact that they are inventors.  FPL chose not to file such declarations with the PTO.  (Compare Amended Complaint, ¶ 44, Dkt. 26, with PTO file, Dkt. 20, Order Re: Judicial Notice 10/18/2011).

## FACTUAL BACKGROUND

FPL contacted Lixi after an FPL employee was killed due to a structural failure of one of FPL's boom trucks.[2]  FPL turned to Lixi—a manufacturing and service company in Huntley, Illinois—for its expertise in attempting to develop a method to identify structural problems in its boom truck extension arms before a failure would occur.  Lixi offers x-ray imaging systems for industries as diverse as manufacturing, electronics, security, petro-chemical, food processing and biomedical.  Typical areas of application include:  quality assurance, non-destructive testing (NDT) inspection, product tampering, security inspection, pipe inspection, product malfunctions and fault analysis.

In early 2005, FPL approached Lixi and explained the prior boom related accident.  Lixi immediately set to work to solve the problem.  Jim Kovarik, Vice President of NDT Technology at Lixi, Inc., who has been involved in the industrial inspection business for over 20 years, was the principal contact at Lixi.  A CAD drawing was fairly quickly produced in March 2005 by Lixi employees.  Lixi provided FPL with a Quotation on March 14, 2005.[3]  The Quotation clearly sets forth that such technology was Lixi's – e.g., "Lixi Boom Inspection System."  (See Dkt. 30, Kovarik Dec., Ex. 1).  A Purchase Contract was entered into on April 5, 2005, incorporating FPL's Standard Terms and Conditions for Development Services, REV 3-17-2005 ("STCDS").  (Dkt. 26, Amended Complaint, Ex. B).  A completed unit was delivered to FPL via

---

[2] *Marilyn Rice v. Altech Industries and Florida Power & Light*, case number in Flagler County is 2005-000788-ca.

[3] Despite FPL being advised of its prior failure to provide the entire Quotation as an Exhibit to the initial Complaint, and without contesting such fact in its previous response to Defendants' Motion to Dismiss, FPL's Amended Complaint AGAIN represents to the Court that the Quotation attached as Exhibit A is true and accurate. (Dkt. 26, Amended Complaint).  It is not.  In fact, the Quotation included a CAD drawing.  (Dkt. 30, Kovarik Dec., Ex. 1).

UPS on November 22, 2005.  Lixi received final payment from FPL under the Purchase Contract on February 26, 2006.  (Dkt. 30, Kovarik Dec., Ex. 7).

Over four years later, in October 2010, FPL contacted Lixi and requested that Lixi disclose who should be properly named as inventors on a patent application filed by FPL directed to the Lixi Boom Inspection System.  This was the first time that Lixi was informed that a patent application had been filed.  Unbeknownst to Lixi, FPL had prepared and filed a patent application on February 1, 2007.  FPL acknowledges that under the Purchase Contract, Lixi (not FPL) was the sole party to "cause patent applications to be filed."  (Dkt. 26, Amended Complaint ¶ 23).  In total disregard of this provision, FPL filed both the '183 and '076 patent applications having claims that FPL admits were invented by Lixi employees.

Despite FPL's improper and secretive filing of the patent applications, Defendants promptly provided, pursuant to FPL's request, properly signed declarations for submission to the Patent and Trademark Office ("PTO") for both the '183 (now issued Pat. No. 7,912,273) and '076 (now abandoned) patent applications.[4]  (Dkt. 30, Kovarik Dec., Ex. 8 and 9).  Defendants questioned FPL's inclusion of Mr. Survant as a named inventor of the novel X-ray detection system set forth in the claims.[5]  Despite Lixi's repeated requests, FPL never provided the basis for naming Mr. Survant or Mr. Martin as inventors.  It is illegal to sign a declaration of inventorship that incorrectly names inventors. [6]

The Purchase Contract, dated April 5, 2005, explicitly states that "you are required to sign and submit an acknowledgement copy of this CONTRACT prior to beginning work."  (Dkt. 26, Amended Complaint, Ex. B, ¶4 of 4)(emphasis added).  The Purchase Contract explicitly states "this contract shall be in effect for the period from April 1, 2005 through March 31, 2008 …" (Dkt. 26, Amended Complaint, Ex. B, ¶1 of 4).  The Purchase Contract included an assignment of "Inventions."  (Dkt. 26, Sec. 12.5 of the STCDS; Amended Complaint, ¶24).

---

[4] Despite a legal obligation to properly name all inventors (*37 CFR 1.41*), when it was filed the '183 patent application initially only named as the sole inventor, George Survant, FPL's general manager for its fleet of trucks. (Dkt. 26, Amended Complaint, ¶29).  Six years after the Purchase Contract, FPL added another alleged inventor, Glen Martin, another of FPL's managers of its fleet of trucks. (Dkt. 20, Order re: Judicial Notice 10/18/2011).

[5] FPL's pattern of conduct of naming a single inventor, followed years later by an amendment to add other inventors only after claims are allowed, is demonstrated in other patent applications of FPL co-pending with the '183 application. (Dkt. 33, Request for Judicial Notice, Pat. Serial No. 11/281,947) (single inventor Donville Smith signs oath that he is sole inventor 12/23/2005; claims allowed on 5/26/10; new oath adding 4 more inventors on 12/1/2010.)

[6] Under the U.S. patent laws, inventors must swear that the other named inventors are actual inventors. (*37 CFR 1.41; 35 U.S.C. 116*).

"Inventions" however, is a defined term, limited to  inventions "made…during this Agreement." (Dkt. 26, Amended Complaint, ¶ 24; Sec. 1.11 of STCDS).

In response to FPL's request for a declaration to be submitted to the PTO in the '183 patent application, Defendants provided FPL with a declaration signed by each of the individual Defendants. (Dkt. 30, Kovarik Dec., Ex. 8 and 9).  FPL failed to submit such declaration to the PTO.  (Dkt. 20, Order re: Judicial Notice 10/18/2011).  FPL also demanded that Defendants sign a new assignment of inventions (Dkt. 30, Kovarik Dec., Ex. 6), but Defendants refused, stating that they would abide by the prior assignment provided in the Purchase Contract.  Unable to coerce Lixi employees into signing FPL's more expansive assignment and incorrect declarations, and apparently not satisfied with the previously signed assignments and declarations provided by Lixi, FPL filed this lawsuit to seek the Court's assistance in obtaining what FPL is not entitled to receive.

## ARGUMENT

A motion to dismiss "will be granted where it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations." *Canon* v. *Clark*, 883 F. Supp. 718, 720 (S.D. Fla. 1995).  Dismissal is justified "when the allegations of the complaint itself clearly demonstrate that plaintiff does not have a claim." *Ibid*.  (quoting *5A Charles Alan Wright & Arthur B. Miller*, *Federal Practice and Procedure* § 1357 (1995)).  In assessing the sufficiency of a complaint, the Court may consider "the face of the complaint," *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368 (11th Cir. 1997), as well as orders and other matters of public record.  *Jackson v. BellSouth Telecomms., Inc.*, 181 F. Supp. 2d 1345, 1365 n. 17 (S.D. Fla. 2001)("where the plaintiff refers to certain documents in the complaint and these documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6)").

Because records from the PTO are (1) central to Plaintiff's claims of breach of contract predicated upon a failure to provide declarations of proper inventors, and (2) a public record that Plaintiff has not disputed, the Court may consider the records in resolving a motion to dismiss *Horsley v. Feldt,* 304 F.3d 1125, 1134 (11th Cir. 2002); *Savtira Corp. v. Hillier*, 8:11-cv-00719, 3011 U.S. Dist. LEXIS 60587 (M.D. Fla. June 7, 2011).

A breach of contract claim may be dismissed if "it clearly appears as a matter of law that the contract cannot support the action alleged." *Helms v. Gen. Film Dev. Corp.*, 346 So. 2d

1064, 1065 (Fla. 3d DCA 1977).  Regardless of the alleged facts, a court may dismiss a complaint on a dispositive issue of law.  *See Marshall County Bd. Of Educ. v. Marshall County Gas Dist.,* 992 F.2d 1171, 1174 (11th Cir. 1993).  Moreover, the court is not required to accept conclusory allegations, unwarranted deductions of fact, or legal conclusions masquerading as facts.  *Oxford Asset Management, Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002), *cert. denied*, 124 S. Ct. 205 (2003).  Mere conclusory allegations are not entitled to be assumed as true upon a motion to dismiss.  *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1951 (2009).

Contract interpretation is an issue of law within the Court's sole purview.  *Centennial Mortg., Inc. v. SG/SC, Ltd.*, 772 So. 2d 564, 565 (Fla. 1st DCA 2000).  Ordinarily, "in the absence of some ambiguity, the intent of the parties to a written contract must be ascertained from the words used in the contract, without resort to extrinsic evidence."  *Lee v. Montgomery*, 624 So. 2d 850, 851 (Fla. 1st DCA 1993).  Further, whether an ambiguity exists in the language of a contract is a question of law to be decided by the court.  *Wheeler v. Wheeler, Erwin & Fountain, P.A.*, 964 So. 2d 745, 749 (Fla. 1st DCA 2007).

## 1. FPL's Counts I, II, III and IV are time barred.

A dismissal based on statute of limitations grounds is appropriate under Fed. R. Civ. P. 12(b)(6) "if it is apparent from the face of the complaint that the claim is time-barred." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).  Even construing the Amended Complaint in the light most favorable to FPL, and accepting all FPL's factual allegations as true, the Amended Complaint must be dismissed because FPL's claims are untimely.

An action on a contract founded on a written instrument shall be commenced within five years.  Fla. Stat. §95.11(2)(b).  Florida law imposes a 4-year statute of limitations on tort claims. Fla. Stat. §95.11(3).  FPL also requests specific performance (Dkt. 26, Amended Complaint, ¶¶ 42, 43), but Florida's statute of limitations provides just one year to bring an action seeking such relief.  Fla. Stat.  §95.11(5)(a).  The statute of limitations for a trade secret claim in Florida is three years.  Fla. Stat. §688.007.

FPL should be familiar with the statute of limitation issues here because it was involved in a relevant 11th Circuit case concerning similar issues:  *Florida Power & Light Co. v. Allis Chalmers Corp*., 85 F.3d 1514, 1518 (11th Cir. 1996).   The issue of when the Florida statute of limitations begins to run has been addressed previously.  For example, in *BDI Construction*

*Company v. Hartford Fire Insurance Co.*, 995 So. 2d 576 (Fla. 3rd DCA 2008), the court held that the 5-year statute of limitations accrued when the subcontractor completed its work and was paid in full for that work.  *See also*, *Federal Insurance Co. v. Southwest Florida Retirement Center, Inc.*, 707 So. 2d 1119, 1121 (Fla. 1998)(Supreme Court held that statute of limitations on surety's obligation to cure defects accrued on date of acceptance of project as having been completed); *BDI Const. Co. v. Hartford Fire Ins. Co.¸* 995 So. 2d 576 (Fla. 3d DCA 2008)(Third District Court held that once BDI Construction accepted E&F Contractors, Inc.'s, work as being complete and paid for the work in full, the 5-year statute of limitations had begun.); *2765 South Bayshore Drive Corp. v. Fred Howland, Inc.*, 212 So. 2d 911, 914 (Fla. 3d DCA 1968).

FPL's breach of contract action accrued when FPL paid its final bill to Lixi for the services performed and the device was delivered—not over five years later when FPL first asked for particular declarations to be signed.  Thus, when FPL accepted Lixi's work as having been completed without reservations and paid for the work in full, the statute of limitations had commenced to run.  Lixi shipped the unit to FPL via UPS on November 17, 2005, and it was delivered November 22, 2005.  (Dkt. 30, Kovarik Dec., Ex. 5).  Lixi received final payment from FPL under the Purchase Contract on February 26, 2006 (Dkt. 30, Kovarik Dec., Ex. 5).  Under such interpretation, the action on the contract became time-barred, at the latest, on February 26, 2011.

Under Florida law, a party is held to have been put on notice when he discovers, or reasonably should have discovered, facts alerting him of the existence of his cause of action. *Jones v. Childers*, 18 F.3d 899 (11th Cir. 1994).  FPL was on notice of the Lixi Boom Inspection System at least at the time it was delivered to FPL in November 2005.  FPL could have sought whatever declarations it believed it was entitled to under the Purchase Contract starting at such time – and had five years to seek any declarations and to file suit for any alleged breach of contract.  FPL waited until October 2010 to first disclose to Lixi that FPL had filed a patent application.[7]  FPL's initial Complaint was filed more than five years <u>after</u> FPL accepted the Lixi device and made full payment for the device.  It is entirely FPL's fault for such delays.  Count II is under a 3-year statute of limitations, Counts III and IV are under a 4-year statute of limitations,

---

[7] Under 37 C.F.R. 1.63 the party or parties executing an oath or declaration are presumed to be the inventors.  MPEP § 2001.06(c).  With respect to the '183 application, FPL led the PTO to believe - for years - that there was only one inventor:  Mr. Survant.  This conduct not only prevented the PTO from questioning patentability under 35 U.S.C. § 102(f), but provides a basis to question the enforceability of the issued '273 patent due to FPL's inequitable conduct arising out of its failure to disclose material information.

and FPL's specific performance demand is under a 1-year statute of limitations.  (Dkt. 26, Amended Complaint).  All are barred due to FPL's delay in bringing suit in a timely manner.

The file history of the '183 application shows that the patent claims, as initially filed by FPL, were **unchanged,** and thus **the scope of such claims remained the same** since FPL initially filed them in February 2007.[8]  (Dkt. 20, Order re: Judicial Notice 10/18/2011).  Thus, any attempt by FPL to argue that it did not need to list the proper inventors for a claim **until after** the PTO has issued a notice of allowance (e.g., because it allegedly could not definitively determine the scope of the *claimed invention* until such time) is without support.[9]  Using FPL's apparent logic, one could presumably avoid the lapsing of a statute of limitations by delaying the obtaining of allowable claims at the PTO for an indefinite period.  Such an interpretation of the statute of limitations runs counter to common sense and violates the predicates underlying the policies of Florida's statute of limitations.  Because this case does not fall into any of the accepted categories for application of Florida's delayed discovery rule, FPL's Amended Complaint is time barred and must be dismissed.[10]

2. **Count II fails because there was no trade secret to misappropriate in view of the publication of the '183 patent application.**

FPL contends that Lixi's '765 application (now U.S. Pat. No. 8,023,722) contains subject matter disclosed and claimed in FPL's '183 application (now U.S. Pat. No. 7,912,273).  (Dkt. 26, Amended Complaint, ¶ 38).  FPL alleges that FPL's "confidential and trade secret information" was included in Lixi's '765 application, despite the fact that the '183 application was published August 7, 2008, and that the '765 application was filed over two years thereafter on December 17, 2010.

---

[8] For years, FPL failed to correct the sworn oath of its truck fleet manager, Mr. Survant, stating that he was the sole inventor of the claims in the '183 application.  (Dkt. 20, Order re Judicial Notice, 10/18/2011).

[9] Examiners are required to reject applications under 35 U.S.C. § 102(f) on the basis of improper inventorship.  *See* MPEP § 2137.01.  See also, *PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.,* 225 F.3d 1315, 1322 (Fed. Cir. 2000); A**n applicant for a patent** is required to disclose the names of **all inventors**.  35 U.S.C. §§ 111, 115-16 (1994).  35 U.S.C. § 115 **requires that the applicant** shall make oath that he believes himself to be the original and first inventor.  35 U.S.C. § 116 ("When an invention is made by two or more persons jointly, they **shall apply for a patent jointly**.").  The party or parties executing an oath or declaration under 37 C.F.R. 1.63 are presumed to be the inventors; MPEP § 2001.06(c) (inventorship disputes are material information).  18 U.S.C. § 1001 (1994) (making intentionally false statements to federal agencies punishable by fines and/or imprisonment of up to five years).

[10] "Aside from . . . cases of fraud, products liability … professional and medical malpractice, and intentional torts based on abuse, there is no other statutory basis for the delayed discovery rule."  *Davis .v Monahan*, 832 So. 2d 708, 710 (Fla. 2002).

"Under Florida's Uniform Trade Secrets Act, a trade secret consists of information that (1) derives economic value from not being readily ascertainable by others and (2) is the subject of reasonable efforts to maintain its secrecy." *Levenger Co. v. Feldman*, 516 F. Supp. 2d 1272, 1286 (S.D. Fla. 2007)(citing Fla. Stat. §688.002).  Information that is generally known or readily accessible to third parties does not qualify for trade secret protection.  *Id.*  To establish a breach of FUTSA, a plaintiff must prove that:  "(1) the plaintiff possessed secret information and took reasonable steps to protect its secrecy, and (2) the secret information was misappropriated, either by one who knew or had reason to know that the secret was improperly obtained or by one who used improper means to obtain it."  *Del Monte Fresh Produce Co. v. Dole Food Co., Inc*., 136 F. Supp. 2d 1271, 1291 (S.D. Fla. 2001).  For there to be actionable misappropriation, the party asserting trade secret protection bears the dual burden of describing the alleged trade secret information and also showing that it has taken reasonable steps to protect this secrecy.  *See American Red Cross v. Palm Beach Blood Bank, Inc*., 143 F.3d 1407, 1410 (11th Cir. 1998). The party asserting trade secret protection must describe the allegedly misappropriated trade secrets with reasonable particularity.  *Id.* at 1325.  *See also, Levenger, Co. v. Feldman*, 516 F.Supp.2d 1272 (S.D. Fla. 2007).

Here, FPL fails on both counts.  FPL generally alleges trade secret misappropriation without ever identifying what, if anything, qualifies as a trade secret under Florida law.  FPL has failed to meet its burden of describing its trade secrets with reasonable particularity.  (Dkt. 26, Amended Complaint, ¶¶ 37, 38).  Moreover, due to FPL's own publication of the '183 patent application, FPL fails to demonstrate that it took reasonable steps to protect its alleged trade secrets – in fact, it disclosed the alleged secrets to the world.[11]

The Supreme Court has explained that "the patenting of a product negates the possibility that the product is also a trade secret." *Tedder Boat Ramp Sys., Inc. v. Hillsborough County, Fla.*, 54 F.Supp.2d 1300, 1303 (M.D.Fla.1999) (citing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800 (1988)).  A patent, including all of its specifications, is made available for

---

[11] Note further that Lixi generated the system as depicted in the March 27, 2005,  Quotation before the Purchase Contract (whose term is explicitly noted to be April 1, 2005 to March 31, 2008).  The Amended Complaint ¶ 26, contends that for information to be considered "confidential information" it must be "generated for the first time by [Lixi] under the Contract solely at FPL's expense."  (Dkt. 26, Amended Complaint).  Because the Quotation CAD figure depicting Lixi's novel X-Ray detection system was undisputedly provided to FPL prior to the date that the Contract came into existence, and was developed at Lixi's expense, such a system cannot by definition be considered "confidential information" owned by FPL.

public view.  A patented process or device is no longer a trade secret once the application is published or the patent is issued, because publication of the application or patent makes the process publicly available for all to see. *Scharmer v. Carrollton Mfg. Co.*, 525 F.2d 95, 99 (6th Cir. 1975) (citing *Grant v. Raymond*, 31 U.S. 218, 242 (1832)); *Keystone Plastics, Inc. v. C & P Plastics, Inc.*, 340 F.Supp. 55 (S.D.Fla. 1972).  Because FPL's alleged trade secrets were disclosed in the publication of the FPL '183 patent application in August 2008 – years prior to the filing of the '765 application – Count II of the Amended Complaint must be dismissed.

### 3. Florida's economic loss doctrine applies to bar FPL's Counts III and IV.

FPL's Counts III and IV are tort claims arising from the identical alleged failure to provide patent declarations and assignments that are the basis of FPL's Count I for breach of contract.  (Compare Dkt. 26, Amended Complaint ¶¶ 52, 53 with ¶¶ 77 and 88).  The Eleventh Circuit has recognized that under Florida's economic loss doctrine a plaintiff may not raise tort claims to recover solely economic damages arising from a breach of contract absent evidence of personal injury or property damage. *Interstate Securities Corp. v. Hayes Corp*., 920 F.2d 769, 773 (11th Cir. 1991), reh'g, en banc, den., 929 F.2d 704 (1991).  This rule proceeds from the theory that courts must preserve well-defined conceptual and practical distinctions between the body of law relating to contract damages and that relating to tort damages, so that contracting parties may rely confidently on their allocation of risk without fear that their counterparts will seek to recoup contract damages through tort actions.  920 F.2d at 777, n. 12.  Accordingly, the economic loss doctrine provides that "parties to a contract can only seek tort damages if conduct occurs that establishes a 'tort' distinguishable from or independent of [the] breach of contract."  920 F.2d at 773; accord *Florida Power & Light Co. v. Westinghouse Electric Corp*., 510 So. 2d 899 (Fla. 1987).  A tort action is barred where a defendant has not committed a breach of duty apart from a breach of contract. *Electronic Sec. Sys. Corp. v. Southern Bell Tel. and Tel. Co*. 482 So. 2d 518, 519 (Fla. 3d DCA 1986).

The Florida Supreme Court in *Florida Power & Light Co. v. Westinghouse Electric Corp,*. 510 So. 2d 899 (Fla. 1987)(rejecting FPL's attempt to sue in tort and stating that the economic loss rule has a "long, historic" basis in Florida), held that where tort claims derive from a contract, contract principles are better suited than tort principles for remedying pure economic losses.  Consequently, when the alleged duty breached is derived from the contractual relationship, it cannot form the basis for a separate and distinct tort. *Interstate Sec. Corp. v.*

Case 9:11-cv-80847-JMH Document 29 Entered on FLSD Docket 01/19/2012 Page 11 of 20

*Hayes Corp.,* 920 F.2d 769, 777, n. 12. (11th Cir. 1991)(contracting parties may rely confidently on their allocation of risk without fear that their counterparts will seek to recoup contract damages through tort actions.) Here, as in FPL's claim against Westinghouse Electric, FPL's factual allegations demonstrate that Counts III and IV are barred by the economic loss doctrine.

> **4. FPL cannot assert breach of contract for a refusal of individuals to do an illegal act**.

The signing of FPL's proposed declarations by the Defendants would have been improper as it could have implicated Defendants in FPL's scheme to defraud the PTO through the improper inclusion of individuals as inventors when the Defendants had no knowledge that such individuals could be considered true inventors of the claimed invention.[12] FPL cannot assert a breach of contract for a refusal of individuals to do an illegal act. Signing FPL's proffered declaration would have been illegal and prohibited by the patent laws and PTO rules.[13]

It is undisputed that FPL had already filed with the PTO an incorrect declaration in the '183 patent application which listed George Survant as the sole inventor. (Dkt. 26, Amended Complaint, ¶29; Dkt. 20, Order re: Judicial Notice 10/18/2011). It is also undisputed that FPL further demanded that Defendants sign another incorrect declaration. (Dkt. 30, Kovarik Dec.). FPL demanded that Defendants sign yet another improper declaration for the '076 application.[14] It is a breach of the duty of candor for an individual to sign a declaration of inventorship that is incorrect. See 37 CFR 1.56.

FPL fails to make any allegation that the Defendants were provided with any declaration to sign in the '168 application. (Dkt. 26, Amended Complaint, ¶ 45). Although there is no actual allegation that a '168 application was ever submitted to Defendants for signature and refused, accepting FPL's theory of liability as having been properly pled, the '168 application is

_____

[12] *Board of Trustees of the Leland Stanford Jr. University v. Roche Molecular Systems Inc.*, 563 U.S. ___, 131 S.Ct. 2188, 2011 WL 2175210 (June 6, 2011)("The inventor must attest that "he believes himself to be the original and first inventor of the [invention] for which he solicits a patent." §115.)

[13] *37 CFR 1.68 Declaration in lieu of oath. (the declarant is warned* that willful false statements and the like are punishable by fine or imprisonment, or both (18 U.S.C. §1001) and may jeopardize the validity of the application or any patent issuing thereon. The declarant must set forth in the body of the declaration that all statements made of the declarant's own knowledge are true and that all statements made on information and belief are believed to be true. *18 U.S.C. 1001 Statements or entries generally. (*"Whoever, …knowingly and willfully... makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.") Because Defendants have no basis to believe that Mr. Survant or Mr. Martin are true inventors, Defendants cannot sign a declaration that these individuals are true inventors.

[14] It is not alleged that FPL ever requested that Defendants sign a declaration for the '168 application. Thus, with the '183 application now issued; the '076 application, now abandoned, and the '168 application the only application at issue, without an allegation that Defendants refused to sign a declaration for the '168 application, there can be no breach of contract and there exists no causative damage.

11

a continuation application of the '076 application.  As a matter of law, a continuation application may be filed with a copy of the declaration from the prior application even if the oath or declaration identifies the application number of the prior application.  MPEP 602.05(a); See 37 CFR 1.63(d)(1)(iv).  FPL has admitted that Defendants signed a declaration for the '076 application (Dkt. 26, Amended Complaint, ¶ 44).  Thus, nothing prevented FPL from proceeding with prosecution of the '168 application using the previous declaration provided by the Defendants with respect to the '076 application.  Because Defendants have provided a declaration that would have permitted FPL to prosecute the '168 application, FPL's causes of action (i.e., Counts I, III and IV) predicted on an alleged failure to sign a declaration for the '168 application must be dismissed as a matter of law.

FPL admits that Defendants did inform it about the issuance of the '722 patent[15] within a month of such patent issuing and within 6 months of such application being filed.   (Dkt. 26, Amended Complaint, ¶ 47).  FPL complains, however, that Lixi did not earlier inform FPL of its patent activities.  (This is ironic because FPL failed to inform Lixi of the existence of the '183 application for over five years.)  A review of the Purchase Contract reveals that there exists no obligation on Lixi's part to inform FPL of its patent activities well after the expiration of the Purchase Contract.  (Dkt. 26, Amended Complaint, Ex. B).  As such, to the extent FPL's causes of action are predicated upon such a nonexistent obligation, they should be dismissed.[16]

5. **Counts III and IV should be dismissed due to a lack of personal jurisdiction over Defendants Burns and Urness.**

The Eleventh Circuit has interpreted Florida's long-arm statute to mean that a defendant who commits a tort that causes injury in Florida is subject to personal jurisdiction under subsection (1)(b) no matter where the act that caused the injury was actually completed. *Cable/Home Communication Corp. v. Network Prod.*, 902 F.2d 829, 855 (11th Cir. 1990).  FPL previously conceded that general jurisdiction does not exist for Defendants Burns and Urness, but contend that this Court has specific jurisdiction over them as a result of their respective submissions of an "improper declaration."  (Dkt. 26, Amended Complaint, ¶ 44).  Here there has been no tortious act directed to or causing injury in Florida by Defendants Burns and Urness.  As

---

[15] The '722 patent is a CIP application containing new material invented by Defendants well after the Purchase Contract expired (Dkt. 33, Request to Take Judicial Notice).

[16] FPL contends that Lixi failed to comply with the priority claiming requirements imposed by statute. (Amended Complaint, ¶ 46).  This is simply false as revealed by the file histories subject to the Request for Judicial Notice.  Both the '273 and '722 patents were examined by the same examiner.

set forth above, in view of the publication of the '183 application, there were no "trade secrets" included in Lixi's '765 application, filed over two years after the publication of the application to the world.  Specific jurisdiction requires a causal connection between the defendant's activity in Florida and the plaintiff's cause of action.  See §§ 48.193(1), (2); *Canale v. Rubin*, 20 So. 3d 463, 466 (Fla. 2d DCA 2009).  At FPL's request, Defendants provided legal declarations on forms authorized by the PTO, attesting to the undisputed fact that they are inventors, such forms provided so that FPL could file them with the PTO.  FPL chose not to provide such declarations to the PTO.  As such, there has been no tortious act by Defendants Burns and Urness directed to or causing injury in Florida.  The mere refusal to sign a declaration that Defendants considered to be inaccurate, and instead providing FPL with what they believed to be a proper declaration of inventorship, is not a tort in any jurisdiction.  *Contrast, Silver v. Levinson*, 648 So. 2d 240, 243 (Fla. 4th DCA 1995)(a non-resident defendant sent a defamatory letter to six Broward County residents in a situation where the tort was not complete until publication of the false statement).

Neither Defendant Burns nor Urness have requisite minimum contacts with the state of Florida to support personal jurisdiction requirements.  Both Defendants provide declarations to this effect. (Dkt. 31, Burns Dec.; Dkt. 32, Urness Dec.).

6. **FPL's Count III for tortious interference with a contractual relationship fails as a matter of law because there is no exiting contract, and the refusal to sign an improper declaration of inventorship is not "unjustified".**

Under Florida law, the elements of a cause of action for tortious interference with a contractual relationship are:  (1) The existence of a contract,[17] (2) The defendant's knowledge of the contract, (3) The defendant's intentional procurement of the contract's breach, (4) Absence of any justification or privilege, [and] (5) Damages resulting from the breach."  *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994).  Here, the Purchase Contract

---

[17] Counts III and IV fail to allege that Defendants have any present obligation to FPL to sign Declarations for patent applications filed by FPL long after the expiration of the Purchase Contract and the completion of the Work (with uncontested delivery of the device in November 2005). *SCI Funeral Services of Florida, Inc. v. Henry*, 839 So. 2d 702, 706 (Fla. 3d DCA 2002)(cannot threaten litigation over an agreement which has expired).  FPL cannot rely on a phrase in the STCDS ("[t]he obligations of the parties hereunder which by their nature survive the termination of the Contract and/or the completion of the Work hereunder, *shall survive*" (see ¶29, STCDS)) to somehow extend the Purchase Contract to provide the requisite "contractual relationship" element for Counts III and IV.  As a matter of law, the Purchase Contract takes precedence over the terms of the STCDS.  (See STCDS Section 10.0 - ORDER OF INTERPRETATION).  The STCDS does not change the explicit terms of the Purchase Contract - which specified that Lixi and FPL's relationship ended on March 31, 2008. (Dkt. 26, Amended Complaint, Ex. B, Purchase Contract, ¶1 of 4).

expired March 31, 2008.  (Dkt. 26, Amended Complaint, Ex. B).  There is no existing contract with which the Defendants could interfere.  See, *Ethan Allen* (relationship with past customers was not one upon which a tortious interference claim could be established); *Johnson Enterprises of Jacksonville, Inc. v. FPL Group*, 162 F.3d 1290, 1321 (11th Cir. 1998)("The alleged business relationship must afford the plaintiff existing or prospective legal or contractual rights."); *Register v. Pierce*, 530 So. 2d 990, 993 (Fla. 1st DCA 1988)(rejecting plaintiffs' tortious interference claims due to plaintiffs' lack of legal rights with their alleged business relationship); *Lake Gateway Motor Inn, Inc. v. Matt's Sunshine Gift Shops, Inc.,* 361 So. 2d 769, 772 (Fla. 4th DCA 1978) ("We do not find any evidence of any legal rights in existence").

Another of the elements that FPL must prove to prevail on its tortious contractual interference claim is that there was "an intentional and ***unjustified*** interference" with the contractual relationship between Lixi and FPL.  *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1995)(emphasis added).  Even if the Purchase Contract had not expired in 2008, neither the Defendants' submission of a signed declaration on a proper PTO form nor their refusal to sign FPL's proffered declaration, which included Mr. Survant and Mr. Martin (with no evidence provided to the Defendants of any information as to why these individuals could be considered co-inventors), does not, as a matter of law, constitute "unjustified" interference with a contractual relationship.  *See*, *Ins. Field Servs., Inc. v. White & White Inspection & Audit Serv., Inc.,* 384 So. 2d 303, 306-07 (Fla. 5th DCA 1980)(the interference must be "unjustified." ); *Americas Homes, Inc. v. Esler,* 668 So. 2d 239 (Fla. 5th DCA 1996)(posting a "for sale by owner" sign on your own property cannot constitute "unjustified interference" with the relationships of others as a matter of law.); *Smith v. Emery Air Freight Corp.*, 512 So. 2d 229, 230 (Fla. 3d DCA 1987)(directed verdict in tortious interference case is proper where defendants' action was justified).  Here, Defendants' refusal to sign a patent application was justified because the declaration included individuals whom the three Defendants did not believe were proper inventors.  If they had signed such declaration, they would have violated 18 U.S.C. § 1001 (1994)(making intentionally false statements to the PTO is punishable by fines and/or imprisonment of up to five years).  No liability arises from interfering with a contract if a defendant had an unqualified legal right to do the action of which the Amended Complaint complains.  *See, e.g.*, *Chipley v. Atkinson,* 1 So. 934, 938 (Fla. 1887); and *Walters v. Blankenship*, 931 So. 2d 137, 143 (Fla. 5th DCA 2006)(dissent).

14

Moreover, "for the interference to be unjustified, the interfering defendant must be a third party, a stranger to the business relationship." *Id*. "A defendant is not a stranger to a business relationship if the defendant has any beneficial or economic interest in, or control over, that relationship*." Palm Beach County Health Care Dist. v. Prof'l Med. Educ., Inc*., 13 So. 3d 1090, 1094 (Fla. 4th DCA 2009). Because Defendant Burns, as the President of Lixi (Dkt. 26, Amended Complaint ¶ 85) had a supervisory interest in the relationship with which he is accused of interfering, FPL's claim for tortious interference with FPL's contractual relationships should be dismissed. *Salit v. Ruden*, 742 So. 2d 381, 385 (Fla. 4th DCA 1999)(A cause of action for tortious interference can exist only against a "stranger to the business relationship.").

Finally, no liability will attach unless it is established "that the defendant intended to procure a breach of the contract." *Chicago Title Ins. Co. v. Alday-Donalson Title Co. of Fla., Inc.*, 832 So. 2d 810, 814 (Fla. 2d DCA 2002). Here, it is undisputed that Defendants voluntarily provided inventor declarations to FPL (Amended Complaint, ¶ 44) so that FPL could file them in the '183 and '076 patent applications. (Dkt. 30, Kovarik Dec., Ex. 8 and 9).[18] It was FPL that decided not to submit to the PTO the signed declarations supplied by the Defendants. As such, FPL cannot remotely establish that Defendants' conduct caused damage to FPL with respect to its past and current patent prosecution efforts.

7. **Count IV must be dismissed because no predicate duty of loyalty to Lixi exists with respect to FPL's prosecution of the '168 application.**

To state a claim for breach of fiduciary duty under Florida law, a plaintiff must establish: "(1) the existence of a fiduciary duty; (2) its breach; and (3) damages proximately caused by the breach." *Minotty v. Baudo*, 42 So. 3d 824, 835-836 (Fla. 4th DCA 2010).

The individual Defendants are not employees of FPL. They are employees of Lixi. Plaintiffs have not alleged that Defendants Kovarik and Urness were either officers or directors of Lixi. Not all employees owe fiduciary duties to their employers. Defendants have never failed to act in Lixi's best interests and in fact, have signed declarations and assignments as requested by Lixi. Thus, because there has been no breach of any duty of loyalty by Defendants

---

[18] FPL previously demanded that Defendants execute a declaration that even FPL acknowledged was incorrect. Defendants refused to sign the declarations proffered by FPL because Defendants believed such declarations improperly included FPL employees as inventors and FPL failed, despite repeated requests, to provide any evidence that such individuals were true inventors. (Dkt. 30, Kovarik Dec., Ex. 7).

to Lixi, FPL cannot succeed on a theory that it can stand in Lixi's shoes and somehow hold the individual Defendants in breach of their alleged fiduciary duties to their employer.

The Defendants also cannot be in breach of any duty of loyalty here because Lixi had no obligation to assist in the prosecution of the '168 patent application–filed over two years after the Purchase Contract had expired and even <u>after</u> the filing of the first Complaint.[19]  If Lixi had no such obligation, then the Defendants cannot, as a matter of law, breach any duty of loyalty to Lixi with respect thereto.  Section 12.5 of the STCDS only pertains to patent applications that Lixi "caused to be filed."  The '168 application was not "filed" by Lixi.  Thus, with respect to Count IV, because Lixi had no obligation under the Purchase Contract to assign to FPL its rights in anything other than "Inventions" as specifically defined in the Purchase Contract, and in any event, only Inventions claimed in patent applications filed by Lixi.  Lixi had no right to demand that its employees assign to FPL any rights in the '168 patent application.  Count IV should be dismissed as it fails to state a claim for which relief can be granted.

In a bizarre attempt to find some cause of action to go after the individual Defendants who were not signatories to any contract, Count IV contends that Lixi employees breached their duties owed to Lixi by not signing FPL's proposed declarations and broad assignments.  (Dkt. 26, Amended Complaint ¶¶88 and 89).  But the individual Defendants never breached any duty owed to Lixi.

The individual Defendants signed patent declarations under 35 U.S.C. § 115 and they assigned their rights to Lixi.  The individual Defendants refused to sign declarations proffered by FPL (which named inventors that Defendants had no basis to swear were actual inventors) because signing the same would have been be illegal.  (18 U.S.C. § 1001).  Defendants had no reason to sign FPL's broad, new assignment, which encompassed new inventions conceived of years after the Purchase Contract's expiration.  Ironically, if Defendants had signed FPL's broad assignment, Defendants then would have deprived Lixi of its rights to its employees' inventions, which would have been a breach of their duties to their employer.

With respect to the allegations made in ¶¶ 88 and 89 of the Amended Complaint, it is not alleged that Defendants were ever provided with any declaration for the '168 application which they refused to sign.  There is a notable absence of any such declaration as an exhibit to the

---

[19] Again, FPL has failed to provide any declaration for the '168 application and thus, Defendants cannot be accused of breach for failure to execute such a declaration.

16

Amended Complaint.  Moreover, because the Purchase Contract had long expired, Defendants had no duty to "inform FPL" (Dkt. 26, Amended Complaint, ¶ 89) about the new inventions they had invented in 2010 or the CIP patent application that was filed to protect such inventions. Defendants had no duty under the Purchase Contract to assign to FPL their individual interests in such new inventions as encompassed by the claims of the '722 patent.  For all the above reasons, Count IV should be dismissed.

    **8.  The Court should deny FPL any equitable relief**.

        FPL failed to act equitably with Lixi by nefariously filing a patent application directed to an Invention when the Purchase Contract (Sec. 12.5 of the STCDS) provided Lixi with the sole right to "cause patent applications to be filed."  It is rudimentary that one seeking equity must, in turn, have acted equitably itself in the matter.  *See e.g., Henderson v. Boose,* 142 Fla. 804, 821, 196 So. 2 671, 678 (1939)("[O]ne who seeks equity must do equity.").  By failing to follow the Purchase Contract's explicit terms that required FPL to request that Lixi file a patent application, and by instead secretly filing a  patent application without Lixi's knowledge or approval, FPL should be barred from seeking any equitable relief from this Court.  FPL incorrectly states that "Pursuant to Section 12.5 of the Standard Terms, Lixi was obligated to assist FPL in…the preparation, **filing** and prosecution of patent applications directed to the boom inspection system."  (Dkt. 26, Amended Complaint, ¶ 23).  This is simply not accurate:  under the Purchase Contract, **only Lixi had the right to <u>file</u> a patent application**.  (Dkt. 26, Amended Complaint, Ex. B).

        "When the happening of a condition precedent is an element of a contract, no recovery can be had with regard to performance of the contract absent substantial compliance with the condition precedent."  *Seaside Cmty. Dev. Corp. v. Edwards*, 573 So. 2d 142, 145 (Fla. 1st DCA 1991).  Here, Section 12.5 of the STCDS explicitly provided that Lixi was to provide reasonable assistance to FPL with regards to patent applications **that Lixi had caused to be filed**.  No recovery can be had by FPL with regard to Lixi's alleged failure to perform under the Purchase Contract due to FPL's failure to comply with the explicit condition precedent set forth in Section 12.5 of the STCDS.  Because this condition precedent was never met, FPL is precluded as a

matter of law from alleging breach of contract based upon an alleged failure of Lixi to provide assistance to FPL.[20]

Moreover, "Inventions" is a specifically defined term that requires that an Invention must have been "made" "during this agreement." (Dkt. 26, Amended Complaint, ¶ 24; STCDS 1.1). Defendants did not make any "Inventions" during the term of the Purchase Contract.[21] Moreover, certain new inventions were first disclosed in Lixi's CIP application (now the '722 patent) in December 2010 – years after the expiration of the Purchase Contract, and are therefore incapable of fitting within the definition of "Inventions" under the STCDS.  FPL cannot ask the Court to re-write the Purchase Contract to say something other than what it says. *Coastal Fuels Marketing, Inc. v. Leasco Investments*, 662 So. 2d 375, 376 (Fla. 5th DCA 1995)(Courts are not permitted to "rewrite contracts" or "add meaning that is not present").

FPL should also be precluded from the remedies it seeks due to its attempt to confuse the distinct issues as to whether a declaration or an assignment is necessary to prosecute a patent application.  As a matter of law, a declaration from the inventors is required to prosecute a U.S. patent application (*37 CFR 1.63 Oath or declaration; 35 U.S.C. 115; MPEP 602).*  Here, the declaration provided by Defendants (Dkt. 26, Amended Complaint, ¶ 44) was sufficient to proceed with the patent prosecution of the FPL pending applications.  But an assignment of all rights from inventors is not required to prosecute a patent application (*35 U.S.C. 261. Ownership; assignment; MPEP 301).*  FPL can pursue prosecution of patent applications without owning all of the inventive rights of the named inventors.  See  *35 U.S.C. §262. Joint owners. ("*...each of the joint owners of a patent may make, use, offer to sell, or sell the patented invention…").  Thus, contrary to FPL's apparently purposeful miscommunication of such legal

---

[20]  Moreover, the "such applications" referred to in Sec. 12.5 are only those that "upon FPL's request … Supplier [Lixi] shall cause patent applications to be filed thereon."

[21] This is clear in view of the Quotation that included the CAD drawing of the Lixi Boom Inspection system well prior to the Purchase Contract.  As Lixi's system was made prior to the Purchase Contract, it was not an "Invention" assigned to FPL.  (Dkt. 30, Kovarik Dec., Ex. 1).

**Fig. 1 of  FPL's U.S. Pat. No. 7,912,273  and Lixi's CAD figure done prior to  April 1, 2005.**




matters to the Court, see Dkt. 26, Amended Complaint ¶ 94 ("injunction requiring the Individual Defendants to execute all assignments, declarations, or other documents that FPL deems **necessary for the successful prosecution** of the '168 application") and ¶¶ 77 and 88 ("refusing to execute documents that are **necessary to prosecute** the '168 application"), nothing presently prevents FPL from pursuing prosecution of the pending FPL patent applications.  While FPL would obviously like to "solely" own all patent applications that it presently has pending, the sole ownership of an invention and the ability to prosecute a patent application with declarations from the named inventors are two separate and distinct issues.  FPL can therefore limit the named inventors to its FPL employees (assuming that they are actual inventors of anything) and obtain another issued patent that is solely owned by FPL (as it did previously in the prosecution of the '183 application to obtain the '273 patent).  Or FPL can proceed with prosecution of its pending applications using the admitted declarations provided by Defendants (as the '168 application is a continuation of the '076 application, now abandoned), and the ownership of such would be pursuant to the laws of inventorship and assignment.  *35 U.S.C. § 262.*  By repeatedly misrepresenting to the Court that it is "necessary" for Defendants to assign all their inventive rights to FPL in order to prosecute the pending FPL applications (Dkt. 26, Amended Complaint, ¶ 94), however, FPL engages in legal legerdemain that the Court should not countenance.[22]

## CONCLUSION

For the foregoing reasons, FPL's Amended Complaint should be dismissed against Lixi and the individual defendants with prejudice.[23]  WHEREFORE, Defendants respectfully request the Court grant their Motion to Dismiss and dismiss the Amended Complaint with prejudice. Because Plaintiffs have already amended their Complaint once, and because the Amended

---

[22] Lixi never "refused to assign" as FPL alleges (Dkt. 26, Amended Complaint ¶¶ 34; 36; 41; 52; 77; 88; 89).  In fact, Lixi did assign to FPL inventive rights to "Inventions" (See STCDS § 12.5).  Defendants only refused to sign the far more extensive assignment document that FPL improperly demanded be signed.  (Dkt. 30, Kovarik Dec., Ex. 6).

[23] *Bryant v. Dupree,* 252 F.3d 1161, 1163 (11th Cir. 2001)(per curiam)(a court should not allow a party to amend its complaint where that party has repeatedly failed to cure deficiencies by amendments previously allowed.)

Complaint is highly detailed, these claims should be dismissed with prejudice as further amendment would be futile.

ADDISON & HOWARD, P. A.
Post Office Box 172535
Tampa, Florida  33672-0535
Tel:  (813) 223-2000
Fax:  (813) 228-6000
Attorneys for Defendants

/s/Michael C. Addison
Michael C. Addison
Florida Bar No. 145579
m@mcalaw.net

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 19, 2012, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the persons listed below and I further certify that I mailed the foregoing document and notice of electronic filing by first class mail to the non-CM/ECF participants listed below.

/s/Michael C. Addison
Michael C. Addison

FELDMAN GALE, P.A.
Counsel for Plaintiff
One Biscayne Tower – 30th Floor
2 S. Biscayne Boulevard
Miami, Florida 33131-4332
Phone: 305-358-5001
Fax: 305-358-3309
James A. Gale, Esq./FBN: 371726
E-Mail: JGale@FeldmanGale.com
Gregory Hillyer, Esq./FBN: 682489
E-Mail: GHillyer@FeldmanGale.com
Rafael A. Perez Pineiro, Esq./FBN: 543101
E-Mail: RPerez@FeldmanGale.com
Richard Guerra, Esq./FBN: 689521
E-Mail: RGuerra@FeldmanGale.com

Joseph E. Kovarik, Esq.
Sheridan Ross PC
1560 Broadway, Suite 1200
Denver, CO  80202
Phone:  303-863-2977
Fax:  303-863-0223
Of Counsel for Defendants

s:\clients open\lixi inc.florida power\pld\motion to dismiss amd complaint 60659.docx